CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 0 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL CARPENTER,<br>**Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:05cv00667 |
| | ) | |
| SHERIFF OF ROANOKE CITY, et al.,<br>**Defendants.** | ) | By: Hon. Michael F. Urbanski<br>United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Michael Carpenter, an inmate proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Carpenter alleges that while housed at the Roanoke City Jail he was subjected to excessive force during a pat down search. By Order entered April 12, 2006, all dispositive matters in this action were referred to the undersigned to submit proposed findings of fact and a recommended disposition.

This matter is before the court on defendants' motion for summary judgment. The court notified Carpenter of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and advised him that his failure to reply to the defendants' motion may result in dismissal and/or summary judgment being granted for the defendants. Carpenter was subsequently granted an extension of time to file a response to defendants' motion. Although Carpenter has not filed a response to the defendants' motion, the allotted period within which he could file a timely response has expired. Thus, this matter is ripe for disposition.

Upon review of the record, the undersigned finds that Carpenter has not presented any issue of material fact and that the defendants are entitled to judgment as a matter of law.

Therefore, the undersigned recommends that defendants' motion for summary judgment be granted and Carpenter's complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.

Carpenter alleges that on July 7, 2005, while he was in the institutional barbershop, Deputies Steck, Slusser, and Minnix began conducting a shakedown of the second floor segregation cells. Carpenter claims he returned to his cell at approximately 9:30 a.m., in the middle of the shakedown. Carpenter immediately noticed that a picture was removed from his cell during the shakedown and inquired as to its removal. Carpenter was ordered to step out of his cell and place his hands on the wall. Slusser then began a pat down search of Carpenter, and, at one point, ran his hands forcibly up Carpenter's leg, "chopp[ed]" his testicles, and "cupped [his] penis and testicals (sic) . . . and pulled violently down on them." Allegedly as a reflexive response to the pain, Carpenter removed his hands from the wall, but was immediately ordered to replace his hands on the wall, and he did so. Carpenter complained he was in pain, but Deputy Steck laughed at him and told him "that is how its done; and next time don't come to jail." Carpenter claims similar pat down searches were conducted on each inmate in the segregation area, in full view of the watch commander, Lt. Ferguson, and Sgt. Goens.

Carpenter claims that immediately following the incident he submitted a request for medical attention, but he was not seen until the next day. During that exam he was told his testicles were probably bruised, and he was provided with four ibuprofen pills and an ice pack. Carpenter does not allege he sought any further medical treatment for his alleged injury nor that he has suffered any ongoing pain or discomfort related to the same.

2

## II.

In support of their motion for summary judgment, defendants have attached affidavits detailing the July 7, 2005 incident and Carpenter's institutional medical record.

Defendants' affidavits establish that on July 7, 2005, Carpenter was housed in cell number 9 in the second floor segregation unit. That day, Lt. Ferguson ordered searches of all the second floor cells in the Roanoke City Jail. Sgt. Goens and Deputies Minnix, Slusser, and Steck assisted in the cell searches. When those officers began searching the segregation unit, Carpenter was in the prison barbershop, and by the time he returned, his cell had been searched and only one cell remained to be searched.

The transporting officer escorting Carpenter advised Lt. Ferguson that Carpenter had been searched prior to leaving the barbershop and had been in the transporting officer's custody since that time. Accordingly, a second search was not conducted, rather Carpenter's handcuffs were removed and he was returned to his cell. Carpenter immediately noticed that a photograph had been removed from his cell and asked about its removal. Deputy Minnix advised Carpenter that the photograph had been placed with his personal property. Carpenter did not make any requests for medical attention or voice any complaints about the allegedly improper search on July 7, 2005.

Carpenter's medical record establishes that he did not make a sick call request alleging any injury to his groin area until July 8, 2005, the day after the alleged incident. At that time he stated his testicles had been grabbed during the "shakedown" and he had been in pain for a few hours. Carpenter was examined by medical staff at approximately 8:00 p.m. that evening. During his examination, Carpenter told the examiner that during a pat down search on July 7,

3

2005, his right testicle was grabbed. The examiner noted that Carpenter's groin was not swollen nor bruised, and Carpenter did not exhibit any signs of discomfort when his testicles were "roll[ed]." Carpenter was given an ice pack and ibuprofen for any pain. Two days later, July 10, 2005, Carpenter made another sick call request alleging he was still in pain due to the July 7, 2005 incident. Later that day he was examined by medical staff, and the examiner noted a "small amount of bruising," and that the left side of Carpenter's scrotum was larger than the right, but did not note any swelling. Carpenter was referred to the institutional physician for further treatment, but was not prescribed any pain medication. He was subsequently examined on July 12, 2005, and was observed to have "slight" edema in his groin, but again was not prescribed any pain medication. The following day, Dr. Berdeen examined Carpenter and found no sign of injury, stating his physical exam was "totally normal." Carpenter made no further complaints of pain or requests for treatment related to this issue.

### III.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996)(court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions case in the form of factual allegations")(internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

4

56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 47 U.S. 242, 247 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). However, a prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings to withstand a motion for summary judgment supported by affidavits containing a conflicting version of the facts. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

### A. Excessive Force Claim

Carpenter alleges that defendant Slusser utilized an excessive amount of force while conducting a pat down search of his groin on July 7, 2005, thereby violating his right to be free from cruel and unusual punishment. Defendants' affidavits all indicate that the alleged pat down search never happened. However, defendants argue, for purposes of this motion, if the search in fact occurred, Carpenter suffered only de minimis injury and cannot recover.

To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry (whether the

5

defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the harm plaintiff suffered was sufficiently serious to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). The question whether the measure taken inflicted unnecessary and wanton pain and suffering turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In determining whether a prison official acted maliciously and sadistically, the court should consider the following: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992)(quotations omitted); Williams, 77 F.3d at 762.

Also, the inmate must prove the corrections officer's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998)(quoting Hudson, 503 U.S. at 8). Although an inmate need not suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Id.; Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the

6

conscience of mankind." Norman, 25 F.3d at 1263 n. 4. In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. (citations omitted).

According to Carpenter, on July 7, 2005, defendant Slusser "chopp[ed]" his testicles and "pulled violently down" on his penis and testicles. Carpenter claims that as a result of this incident, he suffered severe pain, swelling, and bruising in his groin. However, his medical records belie these claims. Carpenter did not seek any medical attention until the day after the incident. Furthermore, he was examined approximately 36 hours after the alleged incident, and, at that time, the examiner noted that Carpenter did not exhibit any signs of pain during palpation of his testicles and had no swelling or bruising. Carpenter was given four ibuprofen and an ice pack to treat his alleged discomfort. Carpenter did not seek any further medical attention for two more days. During a subsequent exam on July 10, 2005, the examiner noted minimal swelling and bruising and referred him to Dr. Berdeen, but did not prescribe any pain medication. Carpenter was examined again on July 12, 2005, and the examiner noted only "slight edema" and some pain on palpation. However, the following day, Carpenter was examined by Dr. Berdeen who found no signs of any injury.

Although Carpenter alleges that Slusser "chopp[ed]" and "pulled" his testicles and penis during a pat down search on July 7, 2005, at approximately 9:30 a.m., he did not seek medical

7

attention until the morning of July 8, 2005. Furthermore, when examined by medical staff on July 8, 2005, at approximately 8:00 p.m., he had did not express pain on palpation of his testicles and had no physical signs of injury. In fact, Carpenter had only minimal edema and bruising which first appeared three days after the incident, and which completely dissipated three days later. Accordingly, the court finds that Carpenter's alleged injuries are de minimis and do not amount to a constitutional violation.

Furthermore, Carpenter has failed to allege any facts which establish those extraordinary circumstances on which a plaintiff can prevail on an excessive force claim when he suffers a de minimis injury. Taylor, 155 F.3d at 483. "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997). Merely a lack of due care for a prisoner's interests and safety fails to show a use of force which is "repugnant to the conscience of mankind." See Whitley v. Albers, 475 U.S. 312, 319 (1986)(finding that the infliction of pain in the course of a prison security measure, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense).

Carpenter alleges that his testicles were "chopp[ed]"and his penis and testicles were "pulled violently down" during the course of a pat down search. The pat down search of inmates entering and leaving their cells is a standard procedure designed to ensure that inmates do not bring contraband and/or potential weapons into or from their cells. Further, a proper search of an inmate would necessarily include the inmate's groin, an area where inmates have previously hidden contraband. Accordingly, the undersigned finds that a search of Carpenter's groin in a

8

manner which was more aggressive than he would have preferred, but which did not cause any significant injury, does not present those "extraordinary" circumstances in which a plaintiff can prevail on an excessive force claim when he suffers merely a de minimis injury. See Taylor, 155 F.3d at 483; see also Thornley v. Flemming, 2004 WL 1348599, at *3 (E.D. Va. March 25, 2004)(finding that absent significant injury, an allegation that a correctional officer struck an inmate in the groin with an upward chopping motion during the course of a pat down search was insufficient to state an Eighth Amendment claim).

### B.    Supervisor/Bystander Liability

Carpenter does not allege that the remaining defendants actually participated in the alleged use of excessive force during his pat down search on July 7, 2005. Rather, Carpenter claims that defendants Lt. Ferguson, Sgt. Goins, and Deputy Steck watched the overly aggressive pat down searches of inmates, but did not intervene. Carpenter does not make any specific claim against defendants former Sheriff McMillan and Deputy Minnex.

Although the doctrine of respondeat superior is inapplicable to § 1983 actions, supervisory officials may be held liable for the actions of their subordinates if the plaintiff can show: (1) the supervisor had actual or constructive knowledge that subordinates were engaged in conduct that posed 'a pervasive and high risk' of constitutional injury; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the actual constitutional injury suffered by the plaintiff. Sadler v. Young, 325 F.Supp.2d 689, 707 (W.D. Va., 2004); Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984). Similarly, an officer may be held liable as a bystander if he (1) knows that a

fellow officer is violating an inmate's constitutional rights; (2) the officer has a reasonable opportunity to prevent the harm; and (3) the officer chooses not to act. Randall v. Prince George's County, 302 F.3d 188, 202-04 (4th Cir. 2002). Carpenter did not suffer an injury of constitutional magnitude on July 7, 2005, nor has he provided any evidence which suggests any other inmate suffered such an injury. Accordingly, the undersigned finds that the defendants cannot be held liable for their alleged inaction related to the July 7, 2005 incident.

## IV.

For the reasons stated above, the undersigned finds that Carpenter has failed to present any issue of material fact and that the defendants are entitled to judgment as a matter of law as to all claims raised in his complaint. Accordingly, it is recommended that the defendants' motion for summary judgment be granted and that Carpenter's complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undesigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to Plaintiff and all counsel of record.

10

Entered this 20 day of September, 2006.

Michael F. Urbanski
United States Magistrate Judge

11